24cr13 PJS/DTS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

1. SAID EREG, and
2. NAJMO AHMED,

          Defendants.

**INDICTMENT**

18 U.S.C. § 371
18 U.S.C. § 1343
18 U.S.C. § 1957

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to the indictment:

## INTRODUCTION

1.    The defendants devised and carried out a multi-million dollar scheme to defraud the Federal Child Nutrition Program designed to provide free meals to children. The defendants obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals and providing food to children. The defendants exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendants took advantage of the Covid-19 pandemic—and the resulting program changes—to enrich themselves by fraudulently misappropriating millions of dollars in Federal Child Nutrition Program funds.



SCANNED
JAN 24 2024
U.S. DISTRICT COURT MPLS

*United States v. Ereg et al*

## A.  Background on the Federal Child Nutrition Program

2.  The Food and Nutrition Service is an agency of the United States Department of Agriculture ("USDA") that administers various Federal Child Nutrition Programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3.  The Summer Food Service Program ("SFSP") is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The SFSP reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

4.  The Child and Adult Care Food Program ("CACFP") is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating childcare centers and after-school programs.

5.  The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight over the Federal Child Nutrition Program.

6.  The Minnesota Department of Education ("MDE") administers the Federal Child Nutrition Program in Minnesota.

7.  Meals funded by the Federal Child Nutrition Program are served by "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by an organization that is authorized to participate in the Federal Child

*United States v. Ereg et al*

Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8.      Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provides federal reimbursement funds on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursements to the sites under its sponsorship. The sponsoring agency retains 10 to 15 percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

9.      Historically, the Federal Child Nutrition Program has provided meals to children involved in educational-based programs or activities. During the Covid-19 pandemic, the USDA waived some of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. It also allowed for off-site food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it more difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

**B.      Feeding Our Future**

10.      Feeding Our Future was a non-profit organization purportedly in business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future.

*United States v. Ereg et al*

11.     Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

12.     Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. The company went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

13.     Bock oversaw the massive scheme to defraud carried out by sites under the sponsorship of Feeding Our Future. Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition Program sites, knowing that the sites were submitting fraudulent claims.

14.     Feeding Our Future received of millions of dollars in administrative fees to which it was not entitled due to its sponsorship and facilitation of sites fraudulent participating in the program. In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds in administrative fees in 2021.

15.     In addition to receiving tens of millions in administrative fees, Feeding Our Future employees also solicited and received bribes and kickbacks from individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a pay-to-play scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a

portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were simply paid in cash. Others were disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and make them look legitimate.

### C.  The Defendants and their Roles

16.  Defendant SAID EREG was the owner and operator of Evergreen Grocery and Deli, a for-profit grocery and deli in Minneapolis. SAID EREG registered Evergreen Grocery and Deli as an assumed name business on July 30, 2020. Evergreen Grocery and Deli operated a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. The site was located at Evergreen Grocery and Deli's small storefront grocery and deli business in South Minneapolis.

17.  NAJMO AHMED worked for Evergreen Grocery and Deli with her husband, SAID EREG. NAJMO AHMED also received payroll payments directly from Feeding Our Future from February to May 2021, and additional payroll payments from Feeding Our Future in January 2022.

18.  Abdikerm Eidleh was a Feeding Our Future employee who solicited and received bribes and kickbacks from individuals and companies involved in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

*United States v. Ereg et al*

## Count 1
### (Conspiracy to Commit Wire Fraud)

19.     From in or about April 2020 through in or about 2022, the defendants,

SAID EREG, and
NAJMO AHMED,

conspired with each other, and others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, transmitted or caused to be transmitted writings, signs, signals, pictures, or sounds by means of wire, radio or television communication in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 371 and 1343.

### Object and Purpose of the Conspiracy

20.     The object and purpose of the conspiracy was to carry out a fraudulent scheme to obtain millions of dollars in Federal Child Nutrition Program funds by submitting fraudulent claims for serving meals to thousands of children a day.

### Manner and Means of the Conspiracy

21.     The conspirators used the following manner and means, among others, to accomplish the object and purpose of the conspiracy:

a.     In or around April 2020, SAID EREG enrolled Evergreen Grocery and Deli as a distribution site in the Federal Child Nutrition Program. The Evergreen Grocery and Deli site, located on Nicollet Avenue in Minneapolis, Minnesota, was responsible for serving meals and providing food to children.

6

*United States v. Ereg et al*

      b.    According to the application for Evergreen Grocery and Deli to participate in the Federal Child Nutrition Program, in addition to serving as a distribution site, also purported to offer "homework help/mentoring."

      c.    Beginning in April 2020, before even receiving official enrollment in the program, Evergreen Grocery and Deli submitted meal counts sheets claiming to have served thousands of meals that month.

      d.    At times, Evergreen Grocery and Deli submitted meal counts claiming to have served more than 3,000 meals, twice a day, seven days a week. However, Evergreen Grocery and Deli only served a fraction of those meals.

      e.    SAID EREG and NAJMO AHMED created and submitted invoices fraudulently claiming that Evergreen Grocery and Deli was entitled to hundreds of thousands of dollars in Federal Child Nutrition Program funds for providing meals to be served at the site.

      f.    Between April 2020 and April 2021, Evergreen Grocery and Deli claimed to have served over 1.4 million meals to children. Based on these fraudulent claims, Evergreen Grocery and Deli received more than $4.2 million in payments from Feeding Our Future for purportedly serving meals.

      g.    SAID EREG and NAJMO AHMED transferred much of this money to personal accounts in their own names. SAID EREG and NAJMO AHMED then used Federal Child Nutrition Program funds to fund their own lifestyles, including to make purchases from Burberry, Louis Vuitton, and Canada Goose.

*United States v. Ereg et al*

h.      SAID EREG and NAJMO AHMED also transferred much of the funds from the Evergreen Grocery and Deli bank account as well as from their personal bank accounts to foreign textile and trading companies located abroad. In total, SAID EREG and NAJMO AHMED transferred more than $2.5 million in Federal Child Nutrition Program funds to foreign accounts controlled by foreign companies.

i.      SAID EREG and NAJMO AHMED also paid more than $100,000 in kickbacks to a Feeding Our Future employee, Abdikerm Eidleh, in exchange for Feeding Our Future's sponsorship of the company's fraudulent participation in the Federal Child Nutrition Program. The payments were often disguised as fees for "consulting" or loan repayments.

## Acts in Furtherance of the Conspiracy

22.     In furtherance of the conspiracy and to effect its unlawful objects, the defendants committed and caused to be committed the following overt acts, among others, in the State and District of Minnesota, and elsewhere:

a.      On or about April 20, 2020, SAID EREG signed an application for Evergreen Grocery and Deli to participate in the Federal Child Nutrition Program.

b.      On or about June 30, 2020, SAID EREG wrote a check to Eidleh Inc. for $1,000 with the subject line "consulting."

c.      On or about December 5, 2020, SAID EREG signed a meal count form claiming that Evergreen Grocery and Deli served meals to more than 2,600 children, twice a day, during the week of November 29, 2020.

*United States v. Ereg et al*

     d.    On or about December 31, 2020, NAJMO AHMED signed a meal count form claiming that Evergreen Grocery and Deli served meals to 3,250 children, twice a day, during the week of January 24, 2021.

     e.    On or about April 30, 2021, NAJMO AHMED signed and submitted a meal count form claiming that Evergreen Grocery and Deli served meals to 3,100 children during the week of April 4, 2021.

All in violation of Title 18, United States Code, Section 371.

### Counts 2-3
(Wire Fraud)

23.    Paragraphs 1 through 22 are incorporated herein.

24.    From at least in or about April 2020 through in or about 2022, in the State and District of Minnesota, and elsewhere, the defendants as set forth below, and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

25.    On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendants, as set forth below, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

*United States v. Ereg et al*

| Count | Defendants | Date (on or about) | Wire Details |
|-------|-----------|--------------------|--------------|
| 2 | NAJMO AHMED | November 1, 2020 | An email from NAJMO AHMED to Aimee Bock at Feeding Our Future requesting a meeting to discuss the federal food program that passed through servers located outside the State of Minnesota. |
| 3 | SAID EREG | March 4, 2021 | An email from SAID EREG to Feeding Our Future submitting meal count sheets for February claims. |

All in violation of Title 18, United States Code, Section 1343.

### Counts 4-8
(Money Laundering)

26.     Paragraphs 1 through 25 are incorporated herein.

27.     On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendants as set forth below, knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Defendants | Date (on or about) | Transaction |
|-------|-----------|--------------------|-------------|
| 4 | SAID EREG NAJMO AHMED | September 22, 2020 | Foreign wire of $46,000 to Quick Chain Trading Co Limited |
| 5 | SAID EREG NAJMO AHMED | March 1, 2021 | Payment of $275,957 towards the purchase of a |

*United States v. Ereg et al*

| | | | townhouse located in New Hope, Minnesota |
|---|---|---|---|
| 6 | SAID EREG NAJMO AHMED | March 29, 2021 | Foreign wire of $197,494 to Quick Chain Trading Co Limited |
| 7 | SAID EREG NAJMO AHMED | April 27, 2021 | Foreign wire of $200,000 to Shaoxing Aifan Textile Co Ltd |
| 8 | SAID EREG NAJMO AHMED | May 19, 2021 | Foreign wire of $200,000 to Shaoxing Aifan Textile Co Ltd |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

28.     Counts 1 through 8 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

29.     If convicted of any of Counts 1-3 of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1-3 of the Indictment.

30.     The property subject to forfeiture includes, but is not limited to Real Property located at 5531 Elm Grove Cir, New Hope, Minnesota.

31.     If convicted of any of Counts 4-8 of this Indictment, the defendants shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a transaction or attempted

*United States v. Ereg et al*

transaction in violation of 18 U.S.C. § 1957 and any property traceable to such property.

32.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____      _____
UNITED STATES ATTORNEY              FOREPERSON