UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-13(2) (NEB/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

v.

NAJMO M. AHMED,

Defendant.

The United States of America and Najmo Ahmed (the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count 7 of the Indictment, which charges the defendant with money laundering, in violation of Title 18, United States Code, Section 1957. The defendant fully understands the nature and elements of the crime with which she has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against her in the Indictment.

2.    **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count 7 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

SCANNED
FEB 2 5 2025
U.S. DISTRICT COURT MPLS

Evergreen Grocery and Deli was a small, storefront grocery stored owned by Said Ereg, Najmo Ahmed's husband. Ahmed helped her husband at Evergreen prior to its participation in the Federal Child Nutrition Program.

Beginning in April 2020, Ereg enrolled Evergreen as a distribution site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. The site was located on Nicolette Avenue in Minneapolis, Minnesota. According to the application for Evergreen to participation in the Federal Child Nutrition Program, submitted by Ereg, in addition to serving as a distribution site, Evergreen would also offer "homework help/mentoring."

Beginning in April 2020, before even receiving official enrollment in the program, Ereg submitted meal count sheets for Evergreen claiming to have served thousands of meals to children that month. At times, meal count sheets submitted by Evergreen to Feeding Our Future claimed to have served more than 3,000 meals, twice a day, seven days a week. However, Evergreen only served a small fraction of those meals.

At the direction of her husband, Ahmed signed some of the meal count sheets that were submitted to Feeding Our Future, including a meal count dated December 31, 2020 claiming Evergreen served 3,250 children, twice a day, during the week of January 24, 2021.

Ahmed does not dispute, and the evidence reflects, between April 2020 and April 2021, Evergreen Grocery and Deli claimed to have served over 1.4 million meals to children. Based on these fraudulent claims, Evergreen Grocery and Deli received

more than $4.2 million in payments from Feeding Our Future for purportedly serving meals.

Ereg transferred nearly all of this money from the Evergreen business accounts to personal accounts in his name and Ahmed's name. Ahmed opened bank accounts at the direction of her husband. Although Ahmed did not know all the details of what her husband was doing, she did know the large sums her husband deposited into her accounts were proceeds of illegal activity.

Ahmed used the funds transferred to her account by her husband to fund her own lifestyle, including to make purchases from Burberry, Louis Vuitton, and Canada Goose. Ahmed also transferred at least $1,147,438 in the funds, which she acknowledges came from the Federal Child Nutrition Program, from her personal bank accounts to foreign textile and trading companies located abroad at the direction of her husband.

For example, on April 27, 2021, Ahmed caused to be wired $200,000 from the Evergreen Grocery and Deli Associated Bank bank account to Shaoxing Aifan Textile Co Ltd. As alleged in Count 7 of the Indictment, Ahmed admits that with the $200,000 wire transfer on April 27, 2021, she knowingly engaged in a monetary transaction through a financial institution affecting interstate commerce in criminally derived property of value greater than $10,000, and that such property was derived from specific unlawful activity, namely the wire fraud scheme to defraud the Federal Child Nutrition Program.

In total, Ahmed laundered at least $1,381,048 in Federal Child Nutrition Program funds through her personal bank accounts.

3

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that she has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, she is withdrawing any motions previously filed.

4.    **Waiver of Constitutional Trial Rights**. The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional consequences, such as the

loss of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with her attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties**. The parties agree that money laundering, as charged in Count 7 of the Indictment, carries statutory penalties of:

      a.     a maximum term of imprisonment of 10 years in prison;

      b.     a supervised release term of up to three years;

      c.     a fine of up to $250,000, or twice the criminally deprived property, whichever is greater; and

      d.     a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

      a.     Base Offense Level. The parties agree that the base offense level for money laundering is **22** because the amount laundered was more than $550,000 but not more than $1.5 million. U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(H).

      b.     Specific Offense Characteristics. The parties agree that the offense level should be increased by **1** level because the defendant's charge of conviction is 18 U.S.C. § 1957. The parties agree that no other specific offense adjustments apply.

c.    Chapter 3 Adjustments. The defendant contends that she was a minimal participant, and, accordingly, she is entitled to a four-level reduction. U.S.S.G. § 3B1.2(a). The Government reserves the right to oppose this reduction. The parties otherwise agree that, other than credit for acceptance of responsibility, no Chapter 3 adjustments apply.

d.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2**-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether this reduction will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

e.    Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

6

f.    <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.    <u>Guidelines Range</u>. If the adjusted offense level is **18**, and the criminal history category is **I**, the Sentencing Guidelines range is **27-33** months of imprisonment. If the adjusted offense level is **14**, and the criminal history category is **I**, the Sentencing Guidelines range is **15-21** months of imprisonment.

h.    <u>Fine Range</u>. If the adjusted offense level is **18**, the Sentencing Guidelines fine range is **$10,000** to **$100,000**. U.S.S.G. § 5E1.2(c)(3). If the adjusted offense level is **14**, the Sentencing Guidelines fine range is **$7,500** to **$75,000**. U.S.S.G. § 5E1.2(c)(3).

i.    <u>Supervised Release</u>. The Sentencing Guidelines call for a term of supervised release of not more than three years for Count 7. U.S.S.G. § 5D1.2(a)(2).

8.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant

to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10.    **Revocation of Supervised Release.** The defendant understands that if she were to violate any supervised release condition while on supervised release, the Court could revoke her supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that she be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11.    **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12.    **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that she owes restitution jointly and severally with her co-defendant in an amount of $1,381,048.

8

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957, and any property traceable to such property, as charged in Count 7 of the Indictment. The Defendant also agrees to forfeit to the United States, any property, real or personal, involved in the Conspiracy to Commit Money Laundering alleged in Count 7 of the Indictment and all property traceable to such property. The Defendant admits that the property subject to forfeiture includes, but is not limited to, the real property located at 5531 Elm Grove Cir, New Hope, Minnesota.

9

The Defendant admits that the Property is subject to forfeiture because it was involved in the Conspiracy to Commit Money Laundering or is traceable to such property.

15.    **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by the parties of the substantive reasonableness of a sentence that includes any term of imprisonment.

The defendant also waives the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.    **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with her decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this

plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated: 2|24/25

                           LISA D. KIRKPATRICK
                           Acting United States Attorney

BY:   JOSEPH H. THOMPSON
       MATTHEW S. EBERT
       HARRY M. JACOBS
       DANIEL W. BOBIER
       Assistant United States Attorneys

Dated:
2-24-25

                           NAJMO M. AHMED
                           Defendant

Dated:   2/24/25

                           JOSEPH DIXON
                           Counsel for Defendant